IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| KENT H. MIDDLETON, JR., as Personal representative of The Estate of Amanda Middleton,<br><br>Plaintiff,<br><br>v.<br><br>NISSAN MOTOR COMPANY, LTD., NISSAN NORTH AMERICA, INC., AUTOLIV, INC. and AUTOLIV ASP, INC.,<br><br>Defendants. | Civil Action No.: 7:10-02529-MGL<br><br>**Defendants' Motion for Leave of Court to Continue the Deposition of Plaintiff's Expert Craig Good and Memorandum in Support** |

Defendants Nissan Motor Company, Ltd., Nissan North America, Inc., and Autoliv ASP, Inc. seek leave of Court, pursuant to Federal Rules of Civil Procedure 26(b)(4), 30(a)(2) and 30(d)(1), to take the deposition of Plaintiff's seatbelt expert Dr. Craig Good in South Carolina on March 7, 2013. Defendants deposed Dr. Good on May 30, 2012 regarding the opinions contained in his initial expert report. Defendants now seek additional time to examine Plaintiff's seatbelt expert Dr. Good regarding his January 29, 2013 Rebuttal Report and the testing and information Dr. Good considered and/or relied upon in his analysis. See 1/29/2013 Rpt, attached as **Exhibit 1.**

Dr. Good's supplemental Rebuttal Report addresses six different topics and is accompanied by 172 photographs, 10 videotapes of testing, and Finite Element Analysis documentation. While many litigants would move first to strike the disclosure as untimely, Defendants understand that in a complex technical case such as this,

1

expert work can take time to develop and produce.[1] Consequently, rather than move to strike, Defendants approached Plaintiff to obtain consent for the continued deposition of Dr. Good to allow Defendants the opportunity to fairly examine this critical expert witness regarding the opinions and work recently disclosed. Unfortunately, after much discussion, the parties have been unable to agree to the terms of a stipulation to allow for the deposition. Consequently, Defendants respectfully seek leave of Court to allow for a continued or second deposition of Dr. Good on March 7, 2013, in South Carolina[2] at Plaintiff's expense. See Rules 26(b)(4)(A), 30(a)(2) and 30(d)(1), FRCP. The undersigned attorneys for Defendants certify that they have consulted with counsel for Plaintiff in an effort to reach an agreement on this issue without bringing the matter to this Court and have been unable to do so. Rule 37(a)(1), FRCP.

## FACTS

This automotive products liability action concerns an allegation of a defective seatbelt buckle manufactured by Defendant Autoliv in a 2000 Nissan Xterra. Dr. Good is Plaintiff's seatbelt buckle expert. He asserts that the Autoliv buckle in the 2000 Nissan Xterra driven by Mrs. Middleton on the day of her fatal crash was defective and unreasonably dangerous, and that such defect caused the buckle to unlatch during the

---

[1] In December, Defendants served Plaintiff with a supplemental report from their expert Demi Garvin just prior to her deposition. Consistent with the spirit of the discovery rules, Defendants offered Plaintiff's counsel additional time or the option to take a second deposition after having additional time to review the report. Similarly, when Defendants produced additional testing from their expert Dr. William Van Arsdell after his deposition, Defendants indicated that they would make Dr. Van Arsdell available for a second deposition to discuss the testing.

[2] Defendants initially agreed to conduct the deposition at a mutually convenient location for the expert and the parties. However, due to Plaintiff's counsel refusal to cooperate,

rollover, resulting in Mrs. Middleton's death. Specifically, Dr. Good claims that a portion of the plastic buckle cover fractured during use and that this plastic "chip" migrated into the latching mechanism of the buckle causing it to "false latch." Dr. Good opines that during the fatal rollover event, "inertial loading of the tongue and/or direct occupant contact with the buckle" pushed the latch plate further into the buckle and in a "concurrent moment" the "webbing tension directed outboard and/or direct occupant loading" pulled the latch plate out of the buckle. **Exhibit 1**, at 4.

Defendants, on the other hand, contend that there is no credible evidence to support Dr. Good's claims that this unique sequence of events occurred in this accident or is even possible in the real world. Rather, the seatbelt system in the subject Xterra was safe and reasonable in its design. Mrs. Middleton's tragic death was the result of her negligence in driving off the road at a high rate of speed due to impairment, and her failure to wear her seatbelt on the morning of the crash.

On January 31, 2012, Plaintiff disclosed Dr. Craig Good as his seatbelt design expert and served Defendants with Dr. Good's expert report in accordance with Fed. R. Civ. P. 26(a)(2)(B). As is customary in South Carolina federal court practice, the parties agreed upon mutually convenient dates for the depositions of all parties' experts.  Dr. Good appeared for his deposition on May 30, 2012. On the morning of his deposition, Dr. Good produced extensive testing documents created on May 29, including a "test log" and nineteen videos that purported to support Dr. Good's seatbelt defect opinions. Defense counsel did not have time during Dr. Good's first deposition on May 30 to

---

critical time has passed such that it will be difficult to schedule a deposition out of state at this time.

3

carefully review and analyze Dr. Good's lengthy and complicated test video that was produced for the first time at that deposition. However, rather than delay or reschedule the deposition in which counsel and the deponent had traveled from out of the state and out of the country respectively to attend, Defendants proceeded with the deposition expressly reserving the right to continue it at a later date, if necessary after a full review of the materials provided. During the course of the deposition, which lasted approximately six and a half hours, Nissan's counsel stated that he would need to review thoroughly the testing videos and no less than six times reserved the right to continue the deposition. 5/31/2012 Deposition of Good, attached as **Exhibit 2** at 44:11-15; 99:4-6; 147:21-23; 281:19-21; 316:15-17; 327:22-25. At no time did Plaintiff's counsel object to Nissan's reservation of the right to continue the deposition. Id.

Prior to the close of discovery in the then current scheduling order, counsel for the Defendants formally requested the continued deposition of Dr. Good to address the testing produced during his May 30 deposition. After some discussion, Plaintiff's counsel eventually stated that he objected at that time to the continued deposition of Dr. Good. He then suggested that additional work may be forthcoming from Dr. Good. Counsel subsequently produced Dr. Good's supplemental Rebuttal Report on January 29 (the last day of discovery under the then current scheduling order), followed by the production of numerous photographs and videotapes on January 30, 2013.

Upon receipt of the supplemental Rebuttal Report and the identification of numerous additional fact witnesses, Defendants notified Plaintiff's counsel that they intended to seek time from the Court to conduct additional discovery, including the continued or second deposition of Dr. Good, in order to inquire about his new report and

4

new testing. Plaintiff consented to Defendants' subsequent motion to amend the scheduling order "to allow sufficient time to evaluate the Rebuttal Report and supporting materials, to depose Dr. Good, and to serve any rebuttal work … and to allow for the depositions of the additional fact witnesses recently identified." **ECF 109.** This Court granted the motion. **ECF 110.**

After the motion was granted, however, Plaintiff's counsel indicated that he would consent only to an additional two hour telephonic deposition of Dr. Good. 2/20/2013 email from D. Yarborough to C. Shytle, attached as **Exhibit 3**.[3] While Defendants' counsel will conduct the deposition as efficiently as possible, Defendants cannot agree to this arbitrary limitation of time. Rather, when Plaintiff notified Defense counsel of the proposed time limitation, Defendants proposed a "wait and see" approach, suggesting that the deposition begin and that if Plaintiff thought that counsel was wasting time, the deposition timing could be reassessed after two hours.[4] Similarly, Defendants cannot agree to a telephonic deposition. It is critical that Dr. Good be made available for deposition in person. The testing upon which Plaintiff relies consists entirely of Dr. Good's personal placement of a plastic chip into the latching mechanism and his subsequent manipulation of the latch plate into and out of the seatbelt buckle. While Plaintiff has produced videotapes of the testing, there are necessarily certain key

---

[3]Not only is Plaintiff's counsel attempting to impose unreasonable conditions upon the deposition of Dr. Good, counsel is now taking the position that no additional depositions may be taken absent leave of Court even though he previously consented to Defendant's motion (granted by this Court) "to allow for the depositions of the additional fact witnesses recently identified."

[4]Defendants anticipate that the deposition will take more than two hours based upon the amount of information recently produced and ask that this Court grant them the latitude necessary to address thoroughly all relevant issues.

5

aspects of the testing that cannot be captured on a two-dimensional video and some aspects that were omitted intentionally from the video. Defendants need to observe directly Dr. Good's handling of the components to understand the precise manner in which he "pushes" and then "pulls" the latch plate out of the buckle.

## ARGUMENT

Federal Rules of Civil Procedure 26(b)(4) provides that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial." Rule 30(d)(1) explains that depositions have a default time of one day of seven hours. However, the discovery rules further provide that courts "<u>must</u> allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent[.]" Rule 30(d)(1), FRCP. (emphasis added). Moreover, to the extent the requested deposition may be considered a "second" rather than "continued" deposition, Rule 30 similarly provides that "the court <u>must</u> grant leave [for a second deposition] to the extent consistent with Rule 26(b)(2)." Rule 30(a)(2)(ii), FRCP.

Defendants are entitled to a continued or second examination of Dr. Good. This is not a situation in which counsel failed to ask pertinent questions and now wishes a second bite at the apple. The information sought in the continued or second deposition relates to information and testing that was not available to Defendants at the time of Dr. Good's May 30 deposition. Moreover, it is undisputed that the newly disclosed information is critical to Plaintiff's case. Plaintiff has just now produced <u>the</u> testing and analysis that he intends to rely upon to support his defect theory and his alternative design proposal. To prevent Defendants the opportunity to question thoroughly Dr. Good regarding his new opinions and the testing upon which he relies would be unduly

6

prejudicial and inconsistent with the language and the intent of Rule 26. The discovery rules are designed to prevent trial by ambush. Plaintiff should not be allowed to produce the bulk of his expert's work on the last day of discovery and then refuse to consent to a reasonable request for a deposition of his expert to explain that work.

The purpose of Dr. Good's January 29 supplemental report is obvious. Counsel rightfully anticipates a strong <u>Daubert</u> challenge and is trying to cobble together enough "tests" and sufficient "analysis" to claim a scientific basis for Dr. Good's opinions. Cross-examination of Dr. Good in his May 30 deposition and the subsequent deposition testimony of Defendants' seatbelt expert Dr. William Van Arsdell revealed the gaping deficiencies in Dr. Good's defect theories. Dr. Good's "testing" - produced on the morning of his May 30 deposition – did not cure the deficiencies, and while a continued deposition of Dr. Good is needed to confirm Defendants' understanding of the most recent work done (or not done) by Dr. Good, it appears that Dr. Good's January 29 opinions and work still fall far short of the admissibility requirements of Rule 702 and <u>Daubert</u>. Defendants seek a continued deposition of Dr. Good to learn the details of the work done, the assumptions made, and the calculations relied upon so that a fair and accurate description can be presented to this Court for its consideration in its Rule 702 gatekeeping function and, if necessary, to prepare adequately its defenses for trial.

Dr. Good's supplemental Rebuttal Report asserts new opinions regarding how the alleged unlatching occurred and new bases for his previously stated opinions. Dr. Good's supplemental Rebuttal Report suggests a new defect theory – that the buckle unlatched due to extraordinary uniaxial forces as alleged to have been observed in a Mazda Protégé collision investigated by Dr. Good and previously undisclosed in this

7

case. Presumably in support of this new opinion, Dr. Good incorporates a four page Appendix A entitled "Mazda Protégé Buckle Failure" of new information not previously produced.

Dr. Good also opines for the first time in his new report how the "push/pull" condition – the basis of his defect theory -- may have occurred in this rollover through inertial loading and/or occupant contact. Defendants are entitled to the opportunity to explore Dr. Good's recently offered explanation and to question him regarding the ten new videotapes and 156 photographs that purport to demonstrate the phenomenon and the underlying empirical data and calculations presumably relied upon by Dr. Good in reaching his opinion.[5]

Dr. Good's new report contains discussions offered for the first time related to slow engagement of the latch plate and loads on seatbelt components in rollover collisions. Dr. Good also has produced a series of new microscopic photographs of the fracture surface of the subject buckle and a discussion of the same. Dr. Good's report fails, however, to assert any opinions linking any of these issues to the underlying crash. Defendants wish to question Dr. Good regarding the import of these sections of his new report.

Finally, Dr. Good has produced a Finite Element Analysis in support of his alternative design theory, a necessary element of any design defect case in South

---

[5] In his May 30 deposition, when questioned, Dr. Good stated that he was not rendering an opinion that the subject buckle was inertially unlatched in this crash or that it was unintentionally actuated by Ms. Middleton. **Exhibit 2**, at 170:7-171:1.

Carolina. Dr. Good did not identify any alternative design in his initial report. He identified an alternative design in response to questioning only in his deposition, but then admitted he had not done any engineering analysis to demonstrate its effectiveness. **Exhibit 2** at 315:22-316:14. The materials provided on January 29 are the first and only analysis produced in support of this essential element of Plaintiff's claims. To date, Plaintiff's counsel has not provided the underlying raw data utilized in the testing despite Defendants' requests. Defendants therefore, ask this Court to order the production of those materials, and any other materials utilized or relied upon by Dr. Good not yet disclosed, prior to the requested deposition.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. It states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methodology reliably to the facts of the case.

Fed. R. Evid. 702. The expert must provide more than mere speculation and assumptions as the basis for his opinions. Tyger Constr. Co. Inc. v. Pensacola Constr. Co., 29 F.3d 137, 142 (4th Cir. 1994) ("An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record). Baseless and unsupported opinions are not helpful to the trier of fact and are therefore inadmissible. General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) ("[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

9

Rule 702 imposes a duty on the district court to ensure expert testimony is relevant and reliable prior to admitting it. In its <u>Daubert</u>-mandated role as the gatekeeper, a district court cannot rely on vigorous cross-examination to sort out issues concerning the reliability and relevance of an expert's analysis and opinions. Instead, a district court's scrutiny of the reliability and relevance of proposed expert testimony must be done before the expert ever takes the witness stand. Defendants must be afforded the opportunity to question Plaintiff's experts to expose any shortcomings so that they can present a clear and accurate description of these inadequacies to the district court for its Rule 702 review. Plaintiff's tactics should not be allowed as they harm not only the Defendants' ability to prepare its defenses, but they significantly hinder this Court's ability to exercise its gatekeeping duties.

## **CONCLUSION**

Defendants ask this Court to allow them the opportunity to fairly examine Dr. Craig Good regarding his new disclosures, his new report, and his testing, and specifically to allow defense counsel to take Dr. Good's continuing deposition to fully inquire about all work done since his May 30, 2012 deposition and everything Dr. Good relied upon for that new work. Defendants come to this Court, unable to reach a stipulation with Plaintiff's counsel, seeking an Order requiring Plaintiff to produce Dr. Craig Good for deposition in South Carolina on March 7, 2013 and to produce all underlying data and any other materials utilized or relied upon by Dr. Good, prior to the requested deposition. In the alternative, Defendants ask that the Rebuttal Report and all opinions, discussion, evidence, and work referenced therein be stricken in its entirety.

BOWMAN & BROOKE, LLP

By: /s/ Courtney C. Shytle
   Joel H. Smith
   Federal Bar No. 3910
   E-Mail: joel.smith@bowmanandbrooke.com
   Courtney C. Shytle
   Federal Bar No. 7148
   E-Mail: courtney.shytle@bowmanandbrooke.com
   Angela G. Strickland
   Federal Bar No. 9824
   E-Mail: angela.strickland@bowmanandbrooke.com
   1441 Main Street, Suite 1200
   Columbia, SC  29201
   (803) 726-7420

Attorneys for Nissan Motor Co., Ltd. and Nissan North America, Inc.

NELSON MULLINS RILEY & SCARBOROUGH

By: /s/Deirdre S. McCool (with permission)
   Deirdre S. McCool
   Federal Bar No. 5518
   E-Mail: Deirdre.McCool@nelsonmullins.com
   151 Meeting Street, Suite 600
   Charleston, SC 29401
   Tel:843.853.5200

Attorney for Autoliv ASP, Inc.

Columbia, South Carolina

February 21, 2013