IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| KENT H. MIDDLETON, JR., as Personal representative of The Estate of Amanda Middleton,<br><br>     Plaintiff,<br><br>v.<br><br>NISSAN MOTOR COMPANY, LTD., NISSAN NORTH AMERICA, INC., AUTOLIV, INC. and AUTOLIV ASP, INC.,<br>     Defendants. | Civil Action No.: 7:10-02529-MGL<br><br>**Defendants' Motion *in Limine* to Exclude All "Other Incident" Evidence** |

Defendants Nissan Motor Company, Ltd, Nissan North America, Inc., and Autoliv ASP move *in limine* to exclude at trial evidence, arguments, or references to, alleged other incidents, warranty claims, or other claims or complaints.[1] Plaintiff has identified other incident documents and witnesses related to *different* models of seat belt buckles, *different* vehicles, and *different* allegations of defect or failure, all of which occurred after the Plaintiff's vehicle was distributed by Nissan. None of these are admissible. Plaintiff has not and cannot cite any other

---

[1] This motion addresses all "other incident" evidence, including but not limited to, claims, lawsuits, warranty claims, exemplar buckles from the field, deposition or live testimony of other incident witnesses, or other claims or complaints produced by Defendants in this litigation and disclosed by Plaintiff *except for* the evidence related to the Tkachuck v. Mazda matter referenced by Plaintiff's expert Dr. Craig Good in his deposition; 5/30/2012 Good dep, attached as **Exhibit A**, at 137:16-142:23, and in his Rebuttal Report; 1/29/2013 Good Rpt., attached as **Exhibit B**, at 4, 12-15. Plaintiff has not and will not be able to establish the admissibility of the Mazda incident. In the interest of efficiency, however, Defendants' argument to exclude that incident will be contained in a separate motion *in limine* to be filed at a later date.

1

incident in which the condition alleged to have occurred in Mrs. Middleton's crash has ever occurred.

## I.     INTRODUCTION

Defendants believe Plaintiff may attempt to introduce evidence of, *inter alia*:

1) Unrelated claims and lawsuit files produced by Defendants in this litigation;

2) Unrelated witness testimony from any or all of the 60 "other incident" witnesses identified by Plaintiff in his supplemental interrogatory responses dated January 3, 2013 and January 29, 2013;

3) Unrelated Nissan Xterra, Frontier, and Quest warranty claims data; and/or

4) Unrelated exemplar buckles from various vehicles alleged to have fractured and/or abraded guide vanes.

Any evidence or testimony related to any of these alleged other incidents is inadmissible because:

1) there is no evidence that any of the other incident evidence proffered arose prior to April 14, 2000, the date of distribution of the subject 2000 Nissan Xterra, and thus, they are inadmissible post-distribution evidence, see Branham v. Ford Motor Co., 390 S.C. 203, 231, 701 S.E.2d 5, 20 (2010);

2) there is no evidence that any of the other incidents, claims or complaints arose from the same cause and condition as the subject occurrence, and thus they cannot be shown to be substantially similar, see Watson v. Ford Motor Co., 389 S.C. 456, 453, 699 S.E.2d 169, 179 (2010);

3) any probative value of the proffered evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and undue consumption of time, see 403, FRE; and

4) testimony or evidence about other alleged incidents based solely upon what the witness heard or read is inadmissible hearsay and is not subject to any exception to the hearsay rule, see Rule 801, FRE.

In addition, Defendants ask that all "other incident" witnesses identified by Plaintiff be stricken. These 60 witnesses were not identified by Plaintiff until January 3 (10 witnesses) and January 29 (50 witnesses), see Plaintiff's Ninth Supplemental Answers to Nissan North America, Inc.'s First Set of Interrogatories, attached as **Exhibit C**, and Plaintiff has objected to the depositions of these witnesses pursuant to Rule 30(a)(2)(i), FRCP, see 2/20/2013 email from D. Yarborough to C. Shytle, attached as **Exhibit D.**

Defendants respectfully ask this Court to consider and rule upon this motion at the completion of briefing, rather than after the filing of other motions *in limine* due to this Court at the end of June 2013. As stated, Plaintiff has identified 58 different incidents that he may or may not attempt to introduce as evidence at this trial. While Defendants are confident that all of these incidents are precluded as a matter of South Carolina law pursuant to Branham and Watson, until this Court issues an Order, Defendants will be forced to expend large amounts of money and time on discovery and an investigation preparing to defend against what amounts to 60 additional lawsuits. This is fundamentally unfair and in contravention of the letter and the spirit of Rule 26 of the Federal Rules of Civil Procedure.

## II.     RELEVANT FACTS

This automotive products liability action arises out of a single vehicle crash that occurred on I-85 in Spartanburg County on the morning of June 3, 2008. Mrs. Amanda Middleton, the driver and sole occupant of a 2000 Nissan Xterra, was on her way home from working her fifth consecutive 12 hours night shift at

St. Francis Hospital in Spartanburg. An eye witness has testified that Mrs. Middleton was driving erratically and at high speeds northbound on the Interstate before exiting the roadway to the right down in to a grassy ravine. She then drove back onto the highway at which time the Xterra began to rollover multiple times, ultimately coming to rest on the opposite side of I-85 after travelling air born, over the median guardrail. Mrs. Middleton suffered fatal injuries in the crash. Urine and blood analysis indicated the presence of illicit prescription drugs in Mrs. Middleton's body at the time of the crash.

Mrs. Middleton's 2000 Nissan Xterra was equipped with a driver side seatbelt buckle and belt system designed and manufactured by Defendant Autoliv. Plaintiff asserts that Mrs. Middleton was wearing her seatbelt but that a defect caused the buckle to "false latch" and then to unlatch during the rollover, resulting in Mrs. Middleton's death.[2]

Plaintiff's claim is very specific and unique both in terms of the defect alleged and the method by which the defect manifests itself to cause the alleged unlatching. Dr. Good does not claim that there is a defect in the latching mechanism. Rather, Plaintiff's defect claim is that plastic guide vane affixed to the inside of the plastic buckle cover is defective in its design because the guide vane is susceptible to fracture after repeated insertion of the latch plate. Dr. Good claims that the fracture was the result of fatigue or repeated application of sub-failure loads to the guide vane caused by the occupant inserting the tongue into the buckle. **Exhibit B** at 5-6. The fracture resulted in one or more plastic

---

[2] "False latch" or "partial engagement" is defined as a failure to comply with the partial engagement requirements of Federal Motor Vehicle Standard 209.

"chips."[3] The tongue then pushed the chip down into the latching mechanism, causing the chip to become jammed in the latching mechanism between the ejector/tongue and the latch. According to Dr. Good, this jamming created a condition in the latching mechanism whereby the "transverse bar" or "lock bar" failed to engage fully. **Exhibit B** at 2-4.

A seatbelt buckle is designed such that when the tongue is pushed into the latching mechanism the lock bar slides into two L-slots, pushing the pall or latch up into the latch plate, locking it into place. Here, Dr. Good contends that the position of the chip caused only one side of the lock bar to engage fully in the L-slot. It is undisputed that even if only one side of the lock bar is engaged fully, as Plaintiff alleges occurred here, the latch plate cannot be pulled out absent tremendous uniaxial forces that will deform and damage the buckle components. **Exhibit B** at 4, 12-15. Such damage, however, is not seen on the Middleton buckle components.

In this case, Dr. Good opines that the buckle released as a result of a novel multi-step sequence of events – not documented in any real world accident, study, or treatise -- in which the tongue is "pushed in to the limit of tongue over-travel (inwards) and then pulled out while applying a concurrent moment." **Exhibit B** at 2. He asserts that the "push" can occur as a result of inertial loading and/or direct occupant contact with the buckle. And that the concurrent moment of "pulling out" can be applied by webbing tension directed

---

[3] In Dr. Good's May 30 deposition he testified that he could not quantify to a reasonable degree of engineering certainty whether the fracture resulted in one chip or multiple chips. Good dep, attached as **Exhibit A** at 66:7-15.

5

outboard and/or direct occupant loading.  This second step, or the "pulling out" condition, requires that the tongue be pulled simultaneously upward and out while bending outboard or sideways toward the driver.  Id. at 2-4. These unusual forces, according to Dr. Good, "can occur in a rollover." Id. at 4.

Finally, both Defendants have testified that neither is aware of any substantially similar claims made by a consumer. See Kosuge dep, attached as **Exhibit E**, at 13:7-18; Cahill dep, attached as **Exhibit F**, at 74:19-75: 9; 94:3-17. Moreover, Plaintiff's own seatbelt expert Dr. Craig Good does not consider any of the 58 incidents identified by Plaintiff to be "substantially similar" to the underlying incident. **Exhibit A** at 137:16- 142:23. Because scientifically reliable expert testimony is a first and necessary step to making a showing of substantial similarity in a product defect design case such as this one, see Watson, 389 S.C. 434, 454, 699 S.E.2d 169, 179 (2010), Plaintiff cannot make the requisite showing as a matter of law.

### III.     ARGUMENT

#### A.     Post-Distribution Other Incident Evidence Is Not Admissible

In Branham v. Ford Motor Co., 390 S.C. 203, 701 S.E.2d 5 (2010), the South Carolina Supreme Court articulated a bright line threshold rule for the admissibility of "other incidents," plainly stating that "[p]ost-manufacture evidence of similar incidents is not admissible to prove liability." Id., 390 S.C. at 231, 701 S.E.2d at 20. Thus, as the Court held in Branham, the admission of post-manufacture evidence of purported similar incidents is error, even if the "substantially similar" threshold is satisfied. Post-distribution evidence is

evidence of facts neither known nor available at the time of distribution. When assessing liability in a design defect claim against a manufacturer, the judgment and ultimate decision of the manufacturer must be evaluated based on what was known or "reasonably attainable" at the time of manufacture. Branham, 390 S.C. at 227, 701 S.E.2d at 17-18 (citing Restatement (Third) of Torts: Product Liability § 2, cmt. a. (1998)). The use of post-distribution evidence to evaluate a product's design through the lens of hindsight is improper. Id. The Court acknowledged the inherent prejudice that flows from post-distribution evidence. The state supreme court relied upon the public policy favoring exclusion of post-distribution evidence:

> It is good when a manufacturer continues to test and evaluate its product after initial manufacture. As additional information is learned, changes may be made that improve product safety and function. As a matter of policy, the law should encourage the design and manufacture of safe, functional products. In holding manufacturers accountable for unreasonably dangerous products pursuant to a fair system, products liability law serves that goal. Moreover, the law should encourage manufacturers to continue to improve their products in terms of utility and safety free from prior design decisions judged through the lens of hindsight.

Branham, 390 S.C. at 229-230, 701 S.E.2d at 19.

The subject 2000 Nissan Xterra was distributed by Defendant Nissan North America, Inc. on April 13, 2000. Certificate of Origin, attached as **Exhibit G**. Therefore, any evidence related to any incident that occurred <u>after</u> April 13, 2000 is not admissible. This Court need not even consider the potentially complex question of "substantial similarity" of another incident unless Plaintiff demonstrates that it satisfies the threshold temporal requirement that it have occurred prior to the date of distribution. A review of the documents produced

7

shows that all of the claims and lawsuits other incident evidence at issue in this case must be excluded because it constitutes inadmissible post-distribution evidence. See Branham, 390 S.C. at 231, 701 S.E.2d at 20. Similarly, the vast majority of the warranty claims data must be excluded as a matter of law because they relate to claims made after April 13, 2000. Id. Likewise, the exemplar buckles gathered by Richard Clarke and relied upon by Dr. Craig Good, see 1/31/2012 Good Rpt., attached as **Exhibit H**, at 13, are inadmissible because there is no evidence that any alleged defect occurred prior to April 13, 2000.

In sum, any evidence or testimony related to any alleged other incidents, claims, happenings, buckles or warranty data that post-date April 13, 2000, the distribution date of the Middleton Xterra must be excluded as a matter of law, regardless if they are established to be substantially similar to the accident and alleged defect at issue.

  B. Other Incidents Must Meet the Stringent Burden of Substantial Similarity in Defect and Causation

Even if Plaintiff can show that any alleged other incident occurred prior to April 13, 2000, Plaintiff has not and cannot establish that any of the incidents are "substantially similar" to the unique events alleged to have occurred in the Middleton accident.

In Whaley v. CSX Transportation, Inc., the South Carolina Supreme Court recognized that similar accidents may be admissible only if they "tend[] to prove or disprove some fact in dispute." 362 S.C. 456, 483, 609 S.E.2d 286, 300 (2005). The Court recognized that other incident evidence has the potential to be

8

"highly prejudicial," and thus set forth a stringent standard for admissibility. Branham, 390 S.C. at 229, 701 S.E.2d at 19. The burden rests on the plaintiff to "present a factual foundation for the court to determine that the other accidents were substantially similar to the accident at issue." Whaley, 362 S.C. at 483, 609 S.E.2d at 300 (quoting Buckman v. Bombardier Corp., 893 F.Supp. 547, 552 (E.D.N.C. 1995)).

The state supreme court recently applied the Whaley factors in the automotive product liability setting in Watson v. Ford Motor Co., 389 S.C. 456, 699 S.E.2d 169 (2010). In Watson, the state's highest court reiterated the stringent burden that Plaintiff must meet to establish the admissibility of other incidents and noted the factors to be used in evaluating whether the "other incident" was caused by the same defect alleged in the underlying action. These factors include proof that (1) the products are similar; (2) the alleged defect is similar; (3) causation related to the defect in other incidents; and (4) exclusion of all reasonable secondary explanations for the cause of the other incidents. Id., 389 S.C. at 453, 699 S.E.2d at 179. The Watson court's application of these factors to the facts of the Watson case is instructive.

The Watson plaintiff alleged her 1995 Ford Explorer's cruise control system was defective because it allowed electromagnetic interference (EMI) to affect the system. Watson asserted that EMI, an unwanted disturbance caused by electromagnetic radiation, interfered with the electrical circuitry of the speed control component of a cruise control system and caused the Explorer to suddenly and uncontrollably accelerate, resulting in the underlying accident.

Watson, 389 S.C. at 442, 699 S.E.2d at 173. Watson introduced Ford internal documents referencing "35 incidents that have been categorized as unexplainable" in which various model year Explorers suddenly accelerated. Watson also presented the video deposition testimony of three witnesses who recalled incidents in which their Explorers allegedly suddenly accelerated and their cruise control would not disengage. Id. at 453-54, 699 S.E.2d at 179.

The SC Supreme Court reversed the resulting multi-million dollar verdict, in part, due to the erroneous admission of this other incident evidence. Citing the Whaley factors, the appellate court concluded that plaintiff failed to demonstrate that the incidents admitted were substantially similar to the underlying incident. Id. at 454, 699 S.E.2d at 179. The Explorers involved in the other incidents were different years and different models. Moreover, the ones referenced in the Ford email were sold in England with the driver's seat located on the right rather than the left side of the vehicle like the subject Explorer. More importantly, the Court found that Watson failed to show a similarity of causation between the malfunction in the underlying accident and the malfunction in the other incidents and failed to exclude reasonable explanations for the cause of the other incidents. Id. The SC Supreme Court held that the absence of expert evidence to show that EMI was a factor in the malfunction in the other incidents was fatal any showing of substantial similarity. Id. In sum, Watson failed to show that the other incident was relevant because plaintiff failed to show that the evidence of these incidents made the existence of the alleged EMI defect in Watson case

more probable. Likewise, here, Plaintiff will not be able to meet his burden of showing the alleged substantial similarity of the other incidents.

    C.    <u>The Other Incidents Cannot Be Shown To Be Substantially Similar to the Middleton Crash Because There is No Evidence That They Arose from the Same Cause Plaintiff Alleges.</u>

The other claims Plaintiff may offer at trial are just that, unproven claims – and not proof that an actual incident occurred – much less proof that an actual incident of unintended buckle unlatching or "false latch" occurred. But even if Plaintiff could somehow prove that an actual incident of unintended buckle unlatching occurred, such a showing is not sufficient to establish admissibility. This is because, similar to inadvertent acceleration claims such as in <u>Watson</u>, there are several possible causes for the alleged malfunction or defect. For example, there are allegations of seatbelt buckles unlatching due to inertial unlatching; inadvertent press button actuation by the occupant's finger or some other object; the buckle or retractor may have been broken in some manner different from what is alleged here; or, some clothing, fabric or other physical object could have gotten jammed into the buckle. Moreover, with such unproven claims, it is always possible that the buckle actually did not release or, as is more likely, it was never buckled in the first place.

Here, Plaintiff will not be able to meet his burden of substantial similarity with regard to any of the other incidents. As stated <u>supra</u>, the defect alleged here is specific and unique. Plaintiff's "false latch" depends upon evidence of (1) a fracture in the guide vane on the bottom buckle cover, (2) that created a chip that

11

was ingested into the latching mechanism of the buckle, (3) that prevented one side of the lock bar from engaging fully into the L slot such that (4) in a rollover, (5) the inertial forces and/or occupant contact pushed the tongue fully into the buckle and (6) in a concurrent moment occupant contact and/or web tension directed outboard pulled the latch plate out of the buckle (7) in a 2000 Nissan Xterra. To demonstrate these elements in a complex product liability design case requires reliable expert testimony that the aforementioned occurred <u>and</u> that excludes all other reasonable secondary explanations for the cause of the other incidents. <u>See</u> <u>Watson</u>, 389 S.C. 434, 454, 699 S.E.2d 169, 179 (2010),

Assuming that the facts as alleged occurred in this accident, these conditions have never been documented in any other incident. No crash test, computer modeling, or other empirical evidence has been produced to demonstrate the substantial similarity of any other incident disclosed to the Middleton accident. Not only can Plaintiff not establish substantiality in the cause and condition of any other incident, as noted <u>supra</u>, many of the incidents cited occurred in different vehicles with different buckles. As for the alleged defect, the vast majority of the claims files do not even allege a buckle unlatching. Likewise, many of the exemplar buckles upon which Good relies as evidence that the alleged defect has occurred in other buckles come from different vehicles and are different model buckles. <u>See</u> **Exhibit B** at 13. Plaintiff has failed to present any evidence of the conditions of use of the exemplar buckles, most of which were found in a junkyard, including whether any of them have any history of malfunctioning in any way. Clarke dep, at 54:3 - 55:17, attached as **Exhibit I**. In

sum, not a single complaint or claim or warranty claim produced describes a buckle release due to partial engagement, let alone that type of buckle failure caused by contamination by a foreign particle that migrates through the buckle to interfere with the latch mechanism. Because Plaintiff has not and cannot meet his burden of proof, this Court should issue an Order excluding all "other incident" evidence.

### D. Any Remote Probative Value is Greatly Outweighed by the Potential for Unfair Prejudice and Confusion.

Courts require a plaintiff to establish a factual foundation to show substantial similarity because evidence of similar incidents may be extremely prejudicial. See Branham, 390 S.C. at 483, 609 S.E.2d at 300 (recognizing that evidence of other accidents may be highly prejudicial). Other incident evidence, when improperly admitted, is not harmless error. This is especially true here, where we know that Plaintiff can show the jury other buckles with fractured guide vanes similar in appearance to that seen in the subject Middleton buckle. It would be very easy for a jury to leap to the unsupported conclusion that a "broken" buckle is a safety defect without any consideration of the undisputed fact that there is no evidence in this litigation that the fracture caused any of the exemplar buckles referenced by Plaintiff to malfunction in any way. Similarly, admitting evidence of alleged buckle release in vehicles absent any evidence of the specific defect and cause alleged here would likely lead to the jury to conclude, based upon unsupported speculation, that there is a "problem" with these buckles unrelated to the subject accident. For these reasons, it is imperative that

this Court apply the stringent standards of admissibility set forth in the <u>Watson</u> and <u>Branham</u> cases.

    E.    <u>Other Incident Evidence May Constitute Inadmissible Hearsay</u>

Hearsay evidence is a statement that is made other than by a witness while testifying at the trial or hearing that is offered to prove the truth of the matter asserted. Rule 801, FRE. Out of court claims and complaints, entered for the truth of the matter stated, are hearsay not within any exception. Were Plaintiff to attempt to introduce any of the other incident claims in this case, they would certainly fall within this hearsay category. In short, second hand accounts of other alleged incidents, claims or lawsuits are merely hearsay (and, in most cases, multiple hearsay) accounts of unverified alleged incidents. Such evidence is therefore inadmissible, and any testimony, whether oral or documentary, relying on these reports or claims should necessarily be excluded at trial under Rule 802.

    F.    <u>The "Other Incident" Witnesses Identified Should Be Stricken.</u>

On January 3, 2012, Plaintiff identified 10 potential other incident witnesses. Plaintiff deposed two of these witnesses. One witness, Ms. Abadie, could not testify that her buckle even unlatched in the incident. Abadie dep at 8:6-10:21, attached as **Exhibit J**. The other witness, Mr. Hernandez, testified that his buckle released, but he provided no testimony regarding why the buckle unlatched and had not inspected it. Hernandez dep at 14:3-8, attached as **Exhibit K**. Assuming that the buckle released, Plaintiff has not disclosed any evidence that the buckle had a fractured guide vane or that the release was the

result of the unique "false latch" scenario alleged to have occurred in the subject incident. Driver testimony alone, even if it were consistent with the allegations in the underlying incident, is insufficient to establish substantial similarity. See Watson, 389 S.C. at 454, 699 S.E.2d at 179 ("Respondents only presented the testimony of other drivers and did not present any expert evidence to show that EMI was a factor in the malfunction in the other incidents. Accordingly, this evidence was not relevant because Respondents failed to show that evidence of these incidents made the existence of the EMI defect in this case more probable.").

Then, on January 29, at the close of discovery under the existing scheduling order, Plaintiff identified 52 additional other incident witnesses. Defendants contacted Plaintiff and indicated that they would seek additional time from the Court for discovery to depose the numerous witnesses identified and to continue the deposition of Dr. Craig Good. Plaintiff consented to the motion and this Court granted the parties an additional 60 days to complete discovery. **ECF 120**. Meanwhile, Plaintiff's counsel assured Defendants that he intends to "winnow down" the OI list once he has an opportunity to review fully the claims files. To date, however, despite numerous requests, Plaintiff's counsel has not done so. Instead, rather than withdraw any of the witnesses identified – even though the vast majority do not even allege buckle release claims, many involve different vehicles with different buckle systems, and two "OI" witnesses are writing Nissan to praise the company for its safe vehicles -  counsel abruptly

informed Defendants that they objected to any further depositions in the case. **Exhibit D.**

This turn of events, after Plaintiff's counsel consented to the request for extension of time for the stated purpose of conducting more depositions, is revealing. Plaintiff's counsel does not really believe that this Court will allow him to present witnesses at trial after he has objected to their depositions.  Rather, he knows that the depositions requested will most certainly foreclose any chance to establish the substantial similarity of the alleged events. He intends instead to "back door" the other incident evidence in through his experts or on cross-examination of Defendants' experts. Moreover, counsel's refusal to withdraw voluntarily any of the names, and thereby the related incidents, forces Defendants to expend the time and resources investigating these claims, interviewing the witnesses, and preparing for 60 potential mini-trials, rather than focusing on the issues in the case.

The Federal Rules do not allow a party to release a warren of rabbits in the courtroom to distract opposing counsel, the Court, and the jury from the facts of the case. This tactic, a modern day trial by ambush, should not be tolerated by this Court. It is contrary to the discovery rules and evidentiary rules.  It invites error and is wasteful of the time of the Court, the parties, and the jury.

## IV.    CONCLUSION

For these reasons, Defendants ask this Court to strike all other incident witnesses identified by Plaintiff and to exclude all other incident information proffered. In the alternative, if this Court decides to defer upon ruling on this

motion, Defendants respectfully seek an Order requiring Plaintiff to identify with certainty the witnesses they intend to call at trial or the incidents they intend to present by a date certain, and granting Defendants leave to depose those witnesses prior to trial and to supplement this brief with any additional information related to those particular witnesses and/or incidents.

                BOWMAN & BROOKE, LLP

                By: /s/ Courtney C. Shytle
                    Joel H. Smith
                    Federal Bar No. 3910
                    E-Mail: joel.smith@bowmanandbrooke.com
                    Courtney C. Shytle
                    Federal Bar No. 7148
                    E-Mail: courtney.shytle@bowmanandbrooke.com
                    Angela G. Strickland
                    Federal Bar No. 9824
                    E-Mail: angela.strickland@bowmanandbrooke.com
                    1441 Main Street, Suite 1200
                    Columbia, SC  29201
                    (803) 726-7420

Attorneys for Nissan Motor Co., Ltd. and Nissan North America, Inc.

              NELSON MULLINS RILEY & SCARBOROUGH

              By:/s/Deirdre S. McCool (with permission)
                 Deirdre S. McCool
                 Federal Bar No. 5518
                 E-Mail: Deirdre.McCool@nelsonmullins.com
                 151 Meeting Street, Suite 600
                 Charleston, SC 29401
                 (843) 853-5200

Attorney for Autoliv ASP, Inc.

Columbia, South Carolina

February 28, 2013