IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| KENT H. MIDDLETON, JR., AS PERSONAL REPRESENTATIVE OF THE ESTATE OF AMANDA MIDDLETON, | ) ) ) ) | CASE NUMBER: 7:10-cv-02529-MGL |
| Plaintiff, | ) ) ) ) ) | |
| NISSAN MOTOR COMPANY, LTD., NISSAN NORTH AMERICA, INC., AUTOLIV, INC. AND AUTOLIV ASP, INC., | ) ) ) ) ) | |
| Defendants. | ) ) ) ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' RULE 30
MOTION FOR LEAVE TO DEPOSE CHERYL O'HARA**

Plaintiff, by his undersigned counsel, hereby files this memorandum in opposition to
Defendants' Rule 30 Motion for Leave to Depose Cheryl O'Hara.  Ms. O'Hara was Ms.
Middleton's supervisor at Spartanburg Regional Medical Center ("SPRMC"), a former
employer.  Ms. Middleton had stopped working at SPRMC over six months before the time of
her death and had received a positive job recommendation from Ms. O'Hara upon her
resignation, despite unfounded allegations and rumors of drug use and diversion.  For the reasons
set forth below, Defendants' Motion should be denied.

## FACTS

Defendants have already taken more than double the maximum number of depositions
allowed by Federal Rule of Civil Procedure 30(a)(2) by taking twenty-four depositions in this
case.  Defendants now seek an Order from the Court for leave to take yet another deposition, that
of Cheryl O'Hara, a witness whose identity they have known for nearly *two years* – since at least

April of 2011.  Over the last two years, the Defendants have explored unsubstantiated allegations and rumors of drug use and diversion made against Ms. Middleton through the exchange of written discovery and in the depositions of the following ten witnesses:  (1)  Lilliana Bruce (August 18, 2011); (2) Eric Larson (August 18, 2011); (3) James Dickens (August 18, 2011); (4) Kimberly Tyndall (August 18, 2011); (5) Kaushik Kotecha (February 16, 2012); (6) Maureen Loehr (May 22, 2012); (7) Dr. Jeffery Craddock (February 11, 2013); (8) Christopher Brock (February 11, 2013); (9) Chris McCoy (February 12, 2013); and (10) Hubert Mark Sanders, (February 12, 2013).

There is no explanation from the Defendants as to why they chose to take all the previous depositions on this issue *instead of* noticing the deposition of Ms. O'Hara, whom they have known about for two years.  In the numerous depositions Defendants have already taken with regards to this issue, the testimony has shown the baseless nature of the allegations and the unwillingness of the witnesses to hypothesize along with Defendants.  The recent testimony of Christopher Brock, Ms. Middleton's employer at the time of her death, after a page and a half hypothetical question, is illustrative:

> Q.  Okay.  I want to go back in time, if I could, to February of 2008.  And I want to ask you to assume the following facts were given to you about Ms. Middleton:  That when asked on her application the reason for her resignation from Spartanburg Regional she stated, as we discussed, that it was for travel.  What if, in fact, she had concealed the fact that she had resigned from Spartanburg Regional instead of submitting to a drug screen?
>
> MR. CROSBY:  Object to the form.
>
> MS. SHYTLE:  I want to -- that's not really a question yet.
>
> THE DEPONENT:  Yeah.
>
> BY MS. SHYTLE:

Q.   I also want you to assume for me that Spartanburg Regional Medical Center's policy dictates that the refusal to submit to a drug screen is considered a positive screen. That's their policy.  I also want you to consider for me or to assume that rather than reporting Ms. Middleton was eligible for rehire, that Cheryl O'Hara, her supervisor, in fact told Advance Nursing that she was not eligible for rehire.  I also want you to assume for me that if instead of being told Ms. Middleton exceeded expectations in all these categories that, in fact, you learned that employee records indicated she was no longer employed due to her violation of Healthcare System policies, procedures and regulations.  And that six months prior to her resignation Ms. Middleton had been suspended without pay for three days for unsatisfactory work performance and personal misconduct.  I also want you to consider that Ms. O'Hara instead of providing the information it appears that she provided, told you that there were several witness incidents when Ms. Middleton's interpersonal behavior towards patients and other staff were unacceptable and had escalated almost to the point of termination.  And finally I want you to assume for me, if you would, that you discovered during the interview process or at some other point that Ms. Middleton, in fact, was currently under investigation, her license was being investigated by LLR for a drug related complaint, and that she had concealed that information from you as we see here on her employment application.  Would those facts, had you known them, been relevant to you in considering whether or not to hire Ms. Middleton?

MR. CROSBY:  Object to the form.

BY MS. SHYTLE:

Q.   Would any of that be relevant to you?

A.   I'll start with this.

Q.   If you had known it.

A.   I'm not going to go back to the past.

Q.   Okay.

3

A.   And the law, everything in these documents says opposite of that.

Q.   No.  I understand.

A.   And her work performance with us was stellar.

Q.   I understand.

A.   And she was -- and I do recall the staff saying that they wanted to renew her.  So I've got a really really big hard time.  And at that time Spartanburg Regional was not a rosy place to work.  We recruited a lot of their staff to work around the state, around the country.  People were leaving in droves.  I don't know Ms. O'Hara.  But if the LLR was doing their job, our documents say different.

Q.   That's not my question.

A.   Yes, it is your question.

Q.   No.

A.   Because my answer to you is, I've got a problem here.  She's fine.  My drug screens are fine.

Q.   Absolutely.

A.   The LLR records are fine.

Q.   I know they are.

A.   You have a hearsay thing over on this side saying opposite.  I don't know what -- I can't bring myself back there.

Q.   I want to be clear.

A.   I'm making myself clear right now.

Q.   No, no, no, sir.  I just want to be very clear that I don't want you to understand my question as accusing Advance Nursing of not doing a good job.  That is not at all the basis of my question.  In fact, I'm not even -- if you'll let me finish, I'm not asking you to believe anything I just told

you.  I'm just asking you if those things I just said were true.  You didn't -- well, let me start over.

None of that stuff I just told you was anything that anyone ever told you back in 2008, was it?  None of that was information that you had in 2008, if in fact it's true?

A.   We have information in 2008.  We have a clean LLR.

Q.   Exactly.

A.   I mean, she says she's a great nurse.  If she was fired from Spartanburg Regional --

Q.   Nobody told you that, did they?

A.   If she was fired from Spartanburg Regional for a drug screen because she denied and that's the same thing as taking drugs, they would have reported it to the Board.  All right.  And OIG and EPLS, one of those would have been triggered too.  If there was abuse of the patients, that should have been on those reports, Office of the Inspector General, the EPLS, none of those are there.

Q.   I understand, sir, and I hear you. I'm looking at your file.

A.   I'm almost to the point that those statements are slanderous.   Because I have documentation from the government saying otherwise.

Q.   Let me ask you this.

A.   I'm just a little bit upset about this.  I mean, the woman has passed and she was a good nurse, and she was going to be rehired.  And I've seen a lot of good nurses get dragged through the mud for nothing.  This bunch of hearsay stuff, I'm having an issue with it.

(Christopher Brock Dep. 60:6 - 65:7, Ex. 1.)  Similar tactics were employed with Dr. Jeffrey

Craddock who found no evidence of substance abuse with Ms. Middleton "aside from an

anonymous letter of questionable authenticity" and "various third-hand reports of suspected

impairment." (Dr. Craddock Psychiatric Evaluation, p. 3. Ex. 2.)

The Defendants have litigated the issue of these unsubstantiated allegations in ten depositions, chased this rumor evidence for two years, and ultimately the record has established that: (1) there was never any *finding* of drug diversion; (2) Ms. Middleton received only *negative* urine and hair drug tests results in response to the allegations, and (3) the allegations of drug use and diversion were based on pure, unfounded *speculation*.

After Ms. Middleton received a notice that a complaint had been made against her nursing license related to the allegations stated above, she, in an effort to maintain her nursing license, voluntarily submitted herself to monitoring and assessment with the S.C. Recovering Professionals Program ("RPP") which:  (1) did *not* give her a substance abuse diagnosis; (2) found that drug monitoring of her was *unnecessary*; and (3) discharged her immediately from the program.  (RPP Letters, 3-26-08, attached as Ex. 3.)  The official discharge from RPP was based in part upon an evaluation performed by psychiatrist Dr. Craddock at Hillcrest Behavioral Health who found no diagnosis for substance abuse.  (Id.)  Importantly, Ms. Middleton underwent urine and hair drug screenings, the results of which were all were uniformly negative.   (Id.; AccuDiagnostics Negative Hair Test, 2-13-08, Ex. 4; Accurate Diagnostics Negative Urine Test, 3-17-08, Ex. 5.)

In addition to the official RPP finding that Ms. Middleton had no substance abuse diagnosis, there is no evidence in the record to support a finding of drug diversion.  Instead, the only evidence with regards to drug diversion is pure, unfounded speculation.  For example, Maureen Loehr, a compliance employee at Spartanburg Regional Medical Center ("SPRMC") who accused Ms. Middleton of diverting drugs, has testified that:  (1) she did not know Ms. Middleton (Loehr Dep. 5:4-5, attached as Ex. 6); (2) no one witnessed Ms. Middleton engage in drug use (Id. at 28:2-5); (3) she had no personal knowledge of what happened to the allegedly

diverted drugs – whether they were used, given away, or sold (Id. at 63:4-24); and (4) she had no personal knowledge of Ms. Middleton using drugs. (Id. at 62:9-22.)     Moreover, there is no evidence that SPRMC made a finding that Ms. Middleton was diverting drugs.  To the contrary, SPRMC provided a job *recommendation* to her for future employment after she resigned. (SPRMC Recommendation, Ex. 7.)

Despite this evidence, Defendants argue that the unsupported allegations and rumors from November 2007 are somehow relevant to her condition *at the time of the crash* – which occurred on June 3, 2008 – over *six months after* these allegations were made.  Defendants also argue that the six-month-old allegations are somehow relevant to Dr. Wood's opinions on Ms. Middleton's loss of earning capacity.

## **ARGUMENT**

Rule 30(a)(2) provides that a party seeking to take more than ten depositions must first obtain leave from the court, "and the court must grant leave to the extent consistent with Rule 26(b)(2)[.]"  Fed. R. Civ. P. 30(a)(2).  The limitation on the number of depositions permitted under the Rules was added in the 1993:  "One aim of this revision is to assure judicial review under the standards stated in Rule 26(b)(2) before any side will be allowed to take more than ten depositions in a case without agreement of the other parties."   Fed. R. Civ. P 30(a)(2)(A) Advisory Committee's Note (1993 Amendment).   Therefore, the legal standard is contained in Rule 26(b)(2), which states:

> .  .  .  the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule it if determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

7

> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).  In addition, "[t]he mere fact that many individuals may have discoverable information does not necessarily entitle a party to depose each such individual." Dixon v. Certainteed Corp., 164 F.R.D. 685, 692 (D. Kan. 1996).

Here, the Defendants' arguments are premised on tenuous at best relevancy arguments instead of addressing the Rule 26(b)(2)(C) factors which contain *the legal standard* upon which leave may be granted to permit an additional deposition outside the limit of ten under Rule 30(a)(2)(A)(i).

The first factor – whether "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" – is not even addressed by the Defendants' Motion.  Fed. R. Civ. P. 26(b)(2)(C)(i).  As stated above, the Defendants' have already explored the issue of drug diversion and drug use to an excessive degree in ten depositions spanning two years, including the depositions of:  Maureen Loehr, the SPRMC employee who accused Ms. Middleton of diverting drugs; Chris McCoy of the Recovering Professional Program; Christopher Brock, of Advanced Nursing, Ms. Middleton's employer at the time of her death; Hubert Mark Sanders of the Department of Labor, Licensing and Regulation; and Dr. Craddock, the psychiatrist that evaluated Ms. Middleton as a result of the allegations who did not give her a substance abuse diagnosis and determined that monitoring her for drugs was unnecessary.  As a result, the

additional deposition sought by the Defendants is unreasonably cumulative and duplicative of the discovery already obtained on this issue.  Further, the discovery sought by the Defendants has been obtained by numerous other witnesses and documents produced in this case.  Therefore, Defendants' Motion should be denied under the first Rule 26(b)(2)(C) factor alone.

The second factor – whether "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action" – clearly favors denial of Defendants' Motion. Fed. R. Civ. P. 26(b)(2)(C)(ii).  The Defendants' became aware of Cheryl O'Hara's existence in at least April of 2011, if not sooner.  In the nearly two-year period since Defendants became aware of Ms. O'Hara's existence, they have had more than ample time to depose her.  For example, one good time to have taken her deposition was on May 22, 2012, when the Defendants' deposed Ms. O'Hara's SPRMC co-worker, Maureen Loehr. Because the Defendants' have had ample opportunity to obtain the information sought, their Motion should also be denied under the second Rule 26(b)(2)(C) factor.

Finally, the third factor – whether "the burden or expense of the proposed discovery outweighs its likely benefit. . ." – also favors the denial of Defendants' Motion.  Fed. R. Civ. P. 26(b)(2)(C)(iii).  It is unclear what the "likely benefit" of deposing Ms. O'Hara would provide the Defendants, other than even further exploration of the rumors concerning Ms. Middleton. Plaintiff has already been burdened by the ten depositions Defendants have already taken with regards to this issue.  Requiring yet another deposition on this issue will not provide any demonstrable benefit, and therefore, Defendants' Motion should also be denied under the third Rule 26(b)(2)(C) factor.

## **CONCLUSION**

The discovery sought by the Defendants is cumulative and duplicative; has already been obtained from other sources; and the burden of the proposed discovery does not outweigh its

likely benefit under Rule 26(b)(2)(C).    Therefore, Defendants' Motion for relief from Rule 30

should be denied.

BY: s/ David B. Yarborough, Jr.
David B. Yarborough, Jr., Esquire
Fed ID #7336
William Applegate, Esquire
Fed ID #9261
YARBOROUGH APPLEGATE LLC
291 East Bay Street, Second Floor
Charleston, SC  29401

and

PETERS, MURDAUGH, PARKER, ELTZROTH
& DETRICK, P.A.

Ronnie L. Crosby
Fed ID #6311
rcrosby@pmped.com
William F. Barnes, III
Fed ID #10639
wbarnes@pmped.com
Post Office Box 457
101 Mulberry Street East
Hampton, SC 29924
(803)943-2111
ATTORNEYS FOR THE PLAINTIFF

Charleston, South Carolina

March 22, 2013