IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| KENT H. MIDDLETON, JR., as Personal representative of The Estate of Amanda Middleton,<br><br>    Plaintiff,<br><br>v.<br><br>NISSAN MOTOR COMPANY, LTD., NISSAN NORTH AMERICA, INC., AUTOLIV, INC. and AUTOLIV ASP, INC.,<br>    Defendants. | Civil Action No.: 7:10-02529-MGL<br><br>**Defendants' Reply to Plaintiff's Memorandum of Law In Opposition to Defendants' Motion *in Limine* to Exclude All "Other Incident" Evidence** |

### I.  INTRODUCTION

In South Carolina, "for a plaintiff to prove his case in a product liability action, he must show that the 'product was in a defective condition at the time that it left the hands of the particular seller . . . and unless evidence can be produced which will support the conclusion that it was *then* defective, the burden is not sustained.'" Branham v. Ford Motor Co., 390 S.C. 203, 226, 701 S.E.2d 5, 17 (2010) (citing Claytor v. Gen. Motors Corp., 277 S.C. 259, 264, 286 S.E.2d 129, 131-32 (1982) (emphasis in Branham)). Consequently, when determining the admissibility of evidence, this Court "must not run afoul of the rule in [South Carolina] product liability cases that prohibits post-distribution evidence to establish liability." Id. at 231, 709 S.E.2d at 20.

As it applies to the pending motion, the South Carolina rule is unequivocal: "Post-manufacture evidence of similar incidents is not admissible to prove liability." Id. at 231, 710 S.E.2d at 20. To ignore this substantive rule of South Carolina product law as

1

articulated by the state's highest appellate court and to admit post-distribution evidence of other incidents, as Plaintiff invites this Court to do, would constitute reversible error. As the South Carolina Supreme Court noted, "[e]vidence of conduct after the date of manufacture improperly shifts the focus from the premanufacturing decision and has the potential to taint any finding of liability." Id. at 227, 701 S.E.2d at 18 (quoting, Gregory v. Cincinnati, Inc., 450 Mich. 1, 538 N.W.2d 325, 326 (1995)).

Consequently, Defendants ask this Court to grant their motion to prohibit the introduction of all other incident evidence proffered in this litigation because, under South Carolina law, such evidence is not relevant to a determination of liability in this product liability case.

## II.    ARGUMENT

### A.    South Carolina's Exclusion Of Post-Distribution Evidence Is A Substantive Rule of Law To Be Applied By This Court.

Contrary to Plaintiffs' assertion, Branham created a substantive rule of law when it held that post-distribution evidence is not admissible in a product liability case.[1] Because this Court, sitting in diversity, is bound by the substantive law of the State of South Carolina, the exclusion of post-distribution evidence applies here just as it would if this case were being heard in a South Carolina state court.

---

[1] The Branham majority opinion explained that the term "post-distribution evidence" means "evidence of facts neither known *nor available* at the time of distribution." Branham, 390 S.C. at 227, 701 S.E.2d at 18 n.17 (emphasis in original). The evidence at issue in the pending motion fits squarely within this definition (by their very nature, other alleged incidents, customer complaints, and exemplar buckles from the field are unknown and unknowable until the time they are presented to a manufacturer), and thus Plaintiffs' argument that the post-distribution evidence rule does not preclude *all* evidence that post-dates distribution is entirely irrelevant to the issue at hand.

2

Under the Erie doctrine, federal courts that sit in diversity must apply substantive state rules of law, be they decisional or statutory, because diversity cases adjudicate state-created rights. Hottle v. Beech Aircraft Corp., 47 F.3d 106, 109 (4th Circ. 1995) (internal citations omitted). Erie thus created the general rule that diversity cases are governed by federal procedural law and state substantive law. Id. However, the Supreme Court has explained "that where a state's procedural rule is bound up with *substantive policy*, a federal court is to apply the state rule." Id. (emphasis added). Such is the case here.

The Supreme Court has provided guidance for how to determine whether a state rule is procedural or substantive. See Hanna v. Plumer, 380 U.S. 460, 466-67, 85 S.Ct. 1136, 1141 (1965). In Hanna, the Court explained that while the decision to apply a state law rule can often be outcome-determinative, the question of whether a state rule is substantive cannot be answered by a mechanical test that asks only whether the application of state law will be outcome-determinative. Id., 380 U.S. at 468-69, 85 S.Ct at 1142. The Court reminded litigants that the substantive/procedural analysis ultimately depends upon consideration of "the twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the law." Id., 380 U.S. at 468, 85 S.Ct. at 1142.

When those twin aims are considered in the context of this case, it is clear Branham's bar on post-distribution evidence is a substantive rule of South Carolina law. It goes without saying that, depending upon the facts of a specific case, one party or the other might prefer a forum that allows for the admission of such evidence to one that does not (or vice versa). Thus, forum-shopping—on the part of plaintiffs and

3

defendants—will surely be encouraged if plaintiffs in South Carolina's federal courts are permitted to introduce post-distribution evidence, but are barred from doing so in state court.

The second aim of Erie, avoidance of the inequitable administration of the laws, will be equally thwarted if post-distribution evidence were to be allowed in this Court. The Branham decision, in a discussion that immediately follows an explicit enunciation of the policy behind South Carolina's law of product liability, explained that the bar on post-distribution evidence seeks to "encourage manufacturers to continue to improve their products in terms of utility and safety free from prior design decisions judged through the lens of hindsight." Branham, 390 S.C. at 230, 701 S.E.2d at 19. As Branham explained, "inherent prejudice [] flows from post-distribution evidence" because such evidence makes it more difficult for a fact-finder to evaluate the decisions manufacturers make based upon the information known or reasonably attainable at the time the decisions are made. Id., at 227-231, 701 S.E.2d at 17-19.

As Branham reiterated, product liability plaintiffs have the burden of establishing that the "'product was in a defective condition at the time that it left the hands of the particular seller…and unless evidence can be produced which will support the conclusion that it was *then* defective, the burden is not sustained." Id. at 6, 701 S.E.2d at 17 (quoting Claytor v. Gen. Motors Corp., 277 S.C. 259, 264, 286 S.E.2d 129, 131-32 (1982) (emphasis in Branham)). The post-distribution rule speaks directly to this element of timing, which, as the South Carolina Supreme Court recognizes, goes to the very heart of the product liability inquiry. By focusing on this temporal element as it relates to a plaintiff's burden, Branham's post-distribution rule seeks to achieve

equitable results by ensuring product sellers are not judged by the unfair standard sometimes afforded by hindsight. It would unquestionably lead to the "inequitable administration of the law" if such a rule, derived from South Carolina's product liability law, is allowed to be presented only in federal court because the post-distribution rule exists precisely in order to ensure equitable results.  Such inequitable application would clearly violate the second aim of Erie, and is further proof that the post-distribution rule is substantive South Carolina law binding upon this Court.

The Branham decision explicitly and repeatedly ties the exclusion of post-distribution evidence to the policy behind product liability in South Carolina, the hallmark of a substantive rule of law under Erie. That the South Carolina rule is substantive rather than procedural is confirmed when considered in light of the twin aims of Erie: forum-shopping is sure to result if the exclusion does not extend to federal courts sitting in diversity, and the rule must be applied in federal court to avoid the inequitable administration of the laws.  For these reasons, the bar against post-distribution evidence is a substantive rule of South Carolina law that must be applied in this Court.

**B.     The Prohibition Against the Admissibility Of Post-Distribution Evidence In A South Carolina Product Liability Case Is Without Exception.**

In South Carolina, post-distribution evidence is not relevant, and therefore, not admissible, when assessing liability in a design defect claim. Instead, "[w]hen assessing liability in a design defect claim against a manufacturer, the judgment and ultimate decision of the manufacturer must be evaluated based on what was known or 'reasonably attainable' at the time of manufacture." Branham, 390 S.C. at 227, 701 S.E.2d at 17 (internal citations omitted). With regard to "other incidents" – the only issue

before this Court in the pending motion – the Court held that "[e]ven assuming a plaintiff satisfies the Whaley 'substantially similar' test, such evidence must not run afoul of the rule in products liability cases that prohibits post-distribution evidence to establish liability." Id. at 231, 701 S.E.2d at 20. The Branham court went on to unambiguously hold that the admission of "post-manufacture evidence of purported similar incidents was error, even if the 'substantially similar' threshold was met." Id. The clarity of this holding—a substantive rule of law—is admirable. "Post-manufacturer evidence of similar incidents is not admissible to prove liability." Id.

In the opposition to the instant motion, Plaintiff offers no valid legal or factual argument for denying Defendants' motion. As discussed above, Branham's bright line exclusion of post-distribution evidence, particularly post-distribution other incident evidence, could not be brighter. Plaintiff's assertion that post-distribution evidence may be admissible for some "other purpose" under a breach of warranty theory has no basis in the law. Similarly, Plaintiff's assertion that the prohibition against post-distribution evidence has no application to a negligence action is not only unsupported, but is directly contradicted by the plain language of Branham.

To the contrary, application of the rule to all product liability cases, regardless of theory, is the only reasonable reading of the plain language of Branham. It is consistent with the Court's stated reasoning for the rule and with the long line of South Carolina cases preceding Branham, holding that to prove liability in a products case, regardless of the theory pursued, the plaintiff must demonstrate that the product was in a defective condition unreasonably dangerous and that such defect injured the plaintiff. See e.g., Branham, 390 S.C. at 210, 701 S.E.2d at 8; Bragg v. Hi-Ranger, Inc., 319 S.C. 531, 462

6

S.E.2d 321 (S.C. Ct. App. 1995); Madden v. Cox, 284 S.C. 574, 579, 328 S.E.2d 108, 112 (S.C. Ct. App. 1985).

Plaintiff's citations to unrelated, pre-Branham decisions and cases from other jurisdictions have no relevance here. Whether or not the Branham decision is consistent with other jurisdictions or commentary may make for an interesting discussion, but it has no bearing on the issue before this Court. Such sources are persuasive only if there is no South Carolina ruling on the subject. Here, we have a clear directive from the state's highest appellate court that directly addresses the issue at hand. When sitting in diversity, this Court, with all due respect, does not have the authority to ignore the rule or to read Plaintiff's suggested unwritten exceptions into the rule. Hottle, 47 F.3d at 109 (explaining that Erie held "federal courts sitting in diversity must apply state substantive law, including case law, in the adjudication of state-created rights.")

The only issue before this Court is whether or not other incident evidence, including warranty claims, lawsuits and personal injury claims, claims files, and the exemplar "junkyard" buckles gathered by Plaintiff's consultant Richard Clarke, are admissible to prove liability in this product liability case. Branham offers no exception for these types of post-distribution evidence, but rather gives an explicit and well-reasoned rule and reasoning requiring their exclusion.

### C.     Plaintiff Has Failed To Present Any Evidence Of "Substantially Similar" Other Incidents.

Even if this Court were to determine that Branham's post-distribution ruling did not apply to the evidence at issue, Plaintiff fails to present any factual evidence to this Court upon which it could make a determination that any of these purported incidents satisfy the substantial similarity test, a prerequisite for admission. Plaintiff has not and

7

cannot cite a single other incident in which there is scientifically supportable evidence that events substantially similar to those alleged here have ever occurred in the real world.

This failure is not surprising because a review of the files reveals no substantially similar events that pre-date (or even that post-date) the manufacture of this buckle and vehicle. Plaintiff's counsel and his seatbelt expert, Dr. Craig Good, have had the opportunity to analyze the claims and warranty files. They have had the opportunity to contact, interview, and depose any and all of the recently disclosed witnesses in order to gather additional evidence in support of the claimed substantial similarity of those witnesses' events. But Plaintiff has failed to present any such evidence to this Court. Dr. Good did not cite any of the warranty data, exemplar buckles, or claims files as substantially similar to the Middleton crash.[2]

Moreover, when Plaintiff disclosed his approximately 60 purported other incident witnesses in January of 2013, counsel for Plaintiff admitted that many of the incidents associated with the identified witnesses were not substantially similar to the Middleton

---

[2]Presumably, Plaintiff has abandoned the two alleged "false latch" events investigated by Dr. Good and cited in the response to Defendants' motion for leave to depose Dr. Good since those events have not been cited in response to the instant motion. **ECF 115.** Both of these incidents occurred after the time of distribution for the subject vehicle. Moreover, Plaintiff conceded in the prior filing that there are significant differences between the allegations of false latch in those two incidents and the Middleton event. In the first event (Cohorst), Dr. Good admits there is no evidence of a plastic chip interfering with the latching mechanism to cause the alleged unlatching. Dr. Good also acknowledges that the unlatching mechanism he alleges occurred in that case (Tkachuk, which involved a different make and model vehicle with a different model buckle) is different from the unlatching mechanism he alleges occurred in the subject buckle. In fact, Plaintiff chides Defendants for asserting that Dr. Good was suggesting in his Rebuttal Report that the two events were similar. **ECF 115**, 10-11 ("Nowhere in the Rebuttal Report does Dr. Good suggest that the subject buckle released in this collision due to the type of forces at issue in the field collision involving the 2002 Mazda Protégé.").

8

event. He agreed at that time, nearly two months ago as part of the discussions surrounding the motion to amend the scheduling order, to narrow the list of potential OI witnesses and to provide Defendants with a new list of the other incident witnesses and to consent to their depositions. In reliance upon that representation, Defendants agreed to request 60 additional days of discovery to depose Dr. Good and any witnesses on the new list. Despite numerous requests, however, Plaintiff has failed to provide the promised list, and instead argues that Defendants failed to act.

The burden of proof rests with the Plaintiff to demonstrate substantial similarity, and that burden has not been met. See Watson, 389 S.C. at 454, 699 S.E.2d at 179 (holding that driver testimony is insufficient to establish substantial similarity and that expert testimony is necessary to make the proper showing). Thus, though the question need not be reached because of the bar against post-distribution evidence, the evidence at issue is not admissible because Plaintiff has not, and cannot, establish that it satisfies the "substantial similarity" test, as recently outlined in Watson and Branham.

### D.   This Motion Is Ripe For Adjudication.

There is no reason to delay ruling on Defendants' motion. Neither the law nor the facts are going to change between now and trial. In the 23 page brief filed in opposition to Defendants' motion on other incidents, Plaintiff failed even to identify a single such incident that he believes at this time might be substantially similar to the subject accident. Plaintiff cannot just "pass" on this motion and ask this Court to delay ruling until trial to give him an opportunity to present some undisclosed evidence from an unknown witness. Plaintiff has known about these potential witnesses and their claims for months. The discovery period ends on March 29, 2013. **ECF 111.**

Plaintiff's request for an unlimited extension of time to acquire other incident evidence up to the time of trial contravenes the purpose of the Federal Rules of Civil Procedure, which exist, in part, to prevent trial by ambush. Despite years of litigation, Plaintiff has failed to present evidence establishing the existence of a substantial similar incident. Under these circumstances, Plaintiff's request that the Court delay a ruling until witnesses are presented at trial is incomprehensible. It would allow Plaintiff to present new, undisclosed evidence and, presumably, a previously undisclosed basis for his expert's opinions *at the time of trial*. This trial technique is patently unfair and should not be endorsed by this Court.

Plaintiff's request would also result in a greatly inefficient use of the Court's time. The purpose of pre-trial evidentiary motions is to obtain rulings regarding key evidentiary issues *prior to trial*. Under Plaintiff's plan, the parties will be conducting depositions of trial witnesses during trial, and the Court will be holding lengthy "other incident" mini-trials outside the presence of the jury to determine admissibility. Plaintiff's request thwarts the very purpose of pre-trial motions and scheduling orders. The issue is ripe for adjudication, and for the reasons discussed above, Defendants request that this Court rule now to exclude all other incident evidence to demonstrate liability.

### III.    CONCLUSION

Branham's bar against post-distribution evidence is a substantive rule of South Carolina law, and therefore is binding on this Court. Furthermore, Plaintiff has made no showing, nor even attempted to show, that any of the evidence in question satisfies the substantially similar standard for admissibility of such evidence. For these reasons,

Defendants respectfully ask this Court to grant Defendants' motion to exclude all "other incident" evidence.

BOWMAN & BROOKE, LLP

By: /s/ Courtney C. Shytle
Joel H. Smith
Federal Bar No. 3910
E-Mail: joel.smith@bowmanandbrooke.com
Courtney C. Shytle
Federal Bar No. 7148
E-Mail: courtney.shytle@bowmanandbrooke.com
Angela G. Strickland
Federal Bar No. 9824
E-Mail: angela.strickland@bowmanandbrooke.com
1441 Main Street, Suite 1200
Columbia, SC  29201
(803) 726-7420

Attorneys for Nissan Motor Co., Ltd. and Nissan North America, Inc.

NELSON MULLINS RILEY & SCARBOROUGH

By:/s/Deirdre S. McCool (with permission)
Deirdre S. McCool
Federal Bar No. 5518
E-Mail: Deirdre.McCool@nelsonmullins.com
151 Meeting Street, Suite 600
Charleston, SC 29401
(843) 853-5200

Attorney for Autoliv ASP, Inc.

Columbia, South Carolina

March 28, 2013